IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Brandon Peake, | ) |
| | ) Civil Action No. 0:19-cv-00382-JMC |
| Plaintiff, | ) |
| | ) **ORDER AND OPINION** |
| v. | ) |
| | ) |
| Suzuki Motor Corporation, American | ) |
| Suzuki Motor Corporation, and Suzuki | ) |
| Motor Corporation of America, Inc., | ) |
| | ) |
| Defendants. | ) |
| | ) |

Presently before the court is Defendant Suzuki Motor Corporation of America, Inc.'s ("SMAI") Second Motion for Reconsideration (ECF No. 64). In its Motion, SMAI urges this court to reconsider (1) the court's October 7, 2019 Order ("Remand Order") (ECF No. 58), and (2) the court's October 21, 2019 Order (the "October Order") (ECF No. 63), which granted Plaintiff Brandon Peake's ("Peake") Motion to Remand. In the October Order, the court denied SMAI's First Motion for Reconsideration (ECF No. 62) and determined that the court had committed no error in remanding the case to the Fairfield Court of Common Pleas. For the reasons stated below, the court **DENIES** SMAI's Second Motion for Reconsideration (ECF No. 64) **WITH PREJUDICE**.[1]

---

[1] *See Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F. 3d 619, 624 (4th Cir. 2015); *see also Thomas v. Drive Auto. Indus. of Am., Inc.*, No. 6:18-cv-169-AMQ, 2018 WL 5258811, at *2 (D.S.C. July 25, 2018) (declining to give party leave to amend pursuant to *Goode* because party could not cure defects), *Report and Recommendation adopted by* 2018 WL 5255183 (D.S.C. Oct. 22, 2018); *Workman v. Kernell*, No. 6:18-cv-00355-RBH-KFM, 2018 WL 4826535, at *2 (D.S.C. Oct. 2, 2018) (declining to give party another opportunity to file because it would be futile), *aff'd*, 766 F. App'x 1 (4th Cir. 2019). Here, SMAI cannot cure the procedural defects in its motion by filing a "Third Motion for Reconsideration" and, doing so would be futile under U.S.C. §1447(d) ("An order remanding a case to the State court from which it was removed is not reviewable on appeal **or otherwise**…"). Therefore, the instant motion is dismissed with prejudice.

# I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

SMAI and Suzuki Motor Corporation ("SMC") are corporations that are in the business of selling and manufacturing Suzuki products. SMAI is incorporated in California with its principal place of business in California. (ECF No. 1.) SMAI has a registered agent in South Carolina and is in good standing with the South Carolina Secretary of State. (ECF No. 27-3.) Further, SMAI does business in South Carolina as evidenced by numerous vehicle dealerships located, and transacting business, in South Carolina. (ECF No. 27-1.) SMC is SMAI's parent company and is a Japanese Corporation with its principal place of business in Japan. (ECF No. 27-2.)

Peake is an individual who filed the underlying products liability action in the Fairfield County Court of Common Pleas on December 19, 2018. (*See generally* ECF No. 1-1 at 2–4.) Peake named three Defendants: (1) SMC (2) American Suzuki Motor Corporation ("ASMC"), and (3) SMAI (collectively, "Defendants"). *Id*. Peake's chief allegation is that the defective condition of a Suzuki Quadrunner 4WD—allegedly designed, manufactured, and sold by Defendants—resulted in serious and severe head and bodily injuries to Peake. (*Id.* at 3-4; ECF No. 11 at 1-3.) On February 11, 2019, SMAI filed its Notice of Removal (ECF No. 1), alleging that the case is removable to this federal court under 28 U.S.C. §1441(b), based on diversity of citizenship. *See* 28 U.S.C. §1332; (ECF No. 1.)  SMC did not consent to the removal.[2]

On February 28, 2019, due to SMC's lack of consent to removal, Peake filed his Motion to Remand (ECF No. 16), arguing that SMAI improperly removed the action without the consent of all "properly joined and served defendants" as required under the removal statute. 28 U.S.C.

---

[2] All parties agree that SMC did not consent to removal.

§1446(b)(2)(A)-1447(c).³ (*See generally* ECF No. 16.) Specifically, Peake argued that SMC was required to consent to removal because it is a "properly joined and served defendant" as the South Carolina Secretary of State accepted service on its behalf on January 7, 2019, pursuant to S.C. Code Ann. §15-9-245(a) (2019).⁴

On March 14, 2019, SMAI timely filed its Opposition to Peake's Motion to Remand (ECF No. 24), contending that SMC was not required to consent to removal because it was not a "properly served" defendant. Specifically, SMAI argued that SMC does not "do business" in South Carolina, and, therefore, service through the Secretary of State was an improper method of service. In fact, SMAI argued that **Peake** was required to serve SMC through the Hague Convention process and failed to do so. On March 21, 2019, Peake filed a Reply (ECF No. 27) in response to SMAI's Response (ECF No. 26). In that Reply, Peake demonstrated that SMAI, and, therefore SMC, does business in South Carolina.⁵ The court ultimately granted Peake's

---

³ 28 U.S.C. §1446(b)(2)(A) states, "When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."

⁴ S.C. Code §15-9-245(a) states,
> For foreign corporations doing business in South Carolina. Every foreign business or nonprofit corporation which is not authorized to do business in this State, by doing in this State, either itself or through an agent, any business, including any business activity for which authority need not be obtained as provided by Section 33-15-101, is considered to have designated the Secretary of State as its agent upon whom process against it may be served in any action or proceeding arising in any court in this State out of or in connection with the doing of any business in this State.

⁵ Peake offered three documents in support of his Motion to Remand: (1) a screenshot of the official Suzuki website, which depicted a GPS map of several Suzuki car dealers located in South Carolina; (2) a screenshot of the "About Us" page on the Suzuki website, and (3) Suzuki Motor of America, Inc.'s official business filing with the South Carolina Secretary of State. (ECF Nos. 27-1, 27-2, 27-3; ECF No. 45.) *See Jeandron v. Bd. of Regents of Univ. Sys. of Md.*, 510 F. App'x 223, 227 (4th Cir. 2013) ("A court may take judicial notice of information publicly announced on a party's website, so long as the website's authenticity is not in dispute and it is capable of accurate and ready determination." (citing Fed. R. Evid. 201(b)).

Motion to Remand after it determined that (1) SMAI and SMC do business in the state as defined under S.C. Code §15-9-245 and (2) SMC failed to consent to removal.[6] (*See* ECF No. 58.)

SMAI filed its First Motion for Reconsideration (ECF No. 62), re-arguing that SMC does not do business in the state and arguing, for the first time, that the **Secretary of State** was required to follow procedures set forth in the Hague Convention. (ECF No. 62 at 1-2.)[7] The court's October Order denied SMAI's First Motion for Reconsideration (ECF No. 62). Now, before the court, is SMAI's Second Motion for Reconsideration (ECF No. 64), which the court considers below.

## II. LEGAL STANDARD

A. <u>Motion for Reconsideration</u>

Rule 59 allows a party to seek an alteration or amendment of a previous order of the court. Fed. R. Civ. P. 59(e). Under Rule 59(e), a court may "alter or amend the judgment if the movant shows either (1) an intervening change in the controlling law, (2) new evidence that was not available at trial, or (3) that there has been a clear error of law or a manifest injustice." *Robinson v. Wix Filtration Corp.*, 599 F. 3d 403, 407 (4th Cir. 2010); *see also Collison v. Int'l Chem. Workers Union*, 34 F. 3d 233, 235 (4th Cir. 1994). It is the moving party's burden to establish one of these three grounds in order to obtain relief under Rule 59(e). *Loren Data Corp. v. GXS, Inc.*, 501 Fed. App'x. 275, 285 (4th Cir. 2012). The decision whether to reconsider an

---

[6] Initially, the court was unable to ascertain whether SMC does business in the state. However, the court re-considered Peake's submitted evidence and concluded that he provided a sufficient basis for the court to determine that SMC does "business in the state" as defined in §15-9-245.

[7] SMAI further argued that even if the court finds that "SMC 'does business in the state'" under S.C. Code §15-9-245, [it] does not conclude the analysis of whether SMC was properly served and therefore was required to consent to removal. (*Id*.) SMAI, then argued, for the first time, that the Hague Convention plainly applies **to the Secretary of State** because the state statute at issue required the Secretary of State to transmit the complaint ***abroad*** to SMC in Japan to complete service on SMC. (*Id*.) (emphasis added).

4

order pursuant to Rule 59(e) is within the sound discretion of the district court. *Hughes v. Bedsole*, 48 F. 3d 1376, 1382 (4th Cir. 1995). A motion to reconsider should not be used as a "vehicle for rearguing the law, raising new arguments, or petitioning a court to change its mind." *Lyles v. Reynolds*, C/A No. 4:14-1063-TMC, 2016 WL 1427324, at *1 (D.S.C. Apr. 12, 2016) (citing *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008)).

### III. DISCUSSION

Relying on Rule 59(e), SMAI has moved the court to grant its Second Motion for Reconsideration after the court has denied its First Motion for Reconsideration. Essentially, SMAI urges this court to reverse its decision to remand the action. Unfortunately, SMAI's Second Motion to Remand is deficient due to incurable procedural defects and also fails as a matter of law. Therefore, the court must deny SMAI's Second Motion for Reconsideration, with prejudice.

A. <u>Reviewability</u>

At the outset, this court's Remand Order and its October Order denying SMAI's First Motion for Reconsideration are unreviewable. While a court may generally grant a Rule 59(e) motion for reconsideration to correct a clear error of law, "that power is circumscribed when the proposed reconsideration concerns a remand order." (citing *Cooke-Bates v. Bayer Corp.,* No. 3:10-CV-261, 2010 WL 3984830, at *2 (E.D. Va. Oct. 8, 2010)). 28 U.S.C. §1447(d) states that:

> An order remanding a case to the State court from which it was removed is not reviewable on appeal **or otherwise**, except that an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title [dealing with Civil Rights Cases] shall be reviewable[.]"

28 U.S.C. §1447(d). (Emphasis added).

The U.S. Supreme Court has ruled that §1447(d) prohibits review of a remand order when, as in this case, the order was issued pursuant to 28 U.S.C. §1447(c). *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996). As the Fourth Circuit has determined, the only remand orders that

5

are immune from review are remand orders based on… **"a defect in removal procedure that was raised by the party within 30 days after the notice of removal was filed**." *See Nadel v. Marino*, 740 F. App'x 276 (4th Cir. 2018) (citing *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008)) (emphasis added); *see also Powerex Corp. v. Reliant Energy Servs., Inc.,* 551 U.S. 224, 127 S. Ct. 2411, 2415, 168 L. Ed. 2d 112 (2007). Building on this rule, "courts have also found that the 'otherwise' language of section 1447(d) **bars district courts from reconsidering orders remanding cases on 1447(c) grounds**. *Cty. of Charleston, S.C. v. Finish Line Found. II Inc.,* No. 2:17-CV-03496, 2018 WL 3303197, at *3 (D.S.C. July 5, 2018) (citing *Trans Penn Wax Corp. v. McCandless*, 50 F. 3d 217, 225 (3d Cir. 1995) (emphasis added). Courts within the Fourth Circuit, and other circuits, have determined that a district court's order to **"remand to the state court based on the absence of [a] defendant's unanimous consent to removal"** constitutes the very "defect in removal procedure" that 1447(c) contemplates. As such, an order remanding a case due to lack of unanimous consent is unreviewable. *Creekmore v. Food Lion, Inc*., 797 F. Supp. 505, 510 (E.D. Va. 1992); *see also In re Ocean Marine Mut. Prot. & Indem. Ass'n, Ltd.*, 3 F.3d 353, 355 (11th Cir. 1993) ("a remand order based on a timely §1447(c) motion to remand for defects in removal procedure is unreviewable."). Additionally, not only is the remand order unreviewable, but **an order denying reconsideration of that remand—and certainly a second motion for reconsideration—is unreviewable**. *See Agostini v. Piper Aircraft Corp.,* 729 F.3d 350, 353 (3d Cir. 2013) (holding that allowing reconsideration of a motion to reconsider remand would subvert the principal purpose of the federal rules protecting state jurisdiction over cases that have been remanded because "it is impossible to disaggregate the order denying reconsideration from the remand order itself).

Here, it is undisputed that Peake timely filed his Motion to Remand within thirty days of SMAI's Notice of Removal, thus, preserving his ability to legally challenge Defendants' procedural defect.[8] Therefore, the court removed the case due to a procedural defect under 1447(c) and that decision is unreviewable. Further, because the court has already remanded the case, it no longer has jurisdiction over this matter and can no longer alter its disposition. Indeed, a certified copy of the remand order was mailed to the Fairfield County Clerk of Court on October 7, 2019—once that happened, the court was divested of jurisdiction.[9] *Agostini*, 729 F. 3d at 355 ("A district court loses jurisdiction over a case once it has completed the remand by sending a certified copy of the remand order to state court.") The court denies SMAI's Second Motion on this ground and could deny it on this ground alone. However, for thoroughness, the court will address the other grounds on which it denies SMAI's Motion.

B. <u>Waiver</u>

A party moving for reconsideration may not raise an issue it could have raised prior to judgment **nor may it be used to argue a case under a novel legal theory that the party had the ability to address in the first instance**. *Irani v. Palmetto Health*, 767 F. App'x 399, 423 (4th Cir. 2019) (citing *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.,* 148 F. 3d 396, 403 (4th Cir.1998) (emphasis added). Under this principle, the court concludes that SMAI waived its ability to raise its new argument (and new legal theory) that **the Secretary of State**, and indirectly, S.C. Stat. §15-9-245

---

[8] SMAI filed its Notice of Removal on February 11, 2019, and Peake filed his Motion to Remand on February 28, 2019—well within the thirty-day deadline imposed on plaintiffs.

[9] *See* ECF Nos. 60, 61; Federal courts are completely divested of jurisdiction to reconsider or vacate an order of remand once the order of remand has been entered and a certified copy of the order has been mailed to the clerk of the state court. *Fed. Deposit Ins. Corp. v. Santiago Plaza*, 598 F. 2d 634, 636 (1st Cir. 1979); *In re La Providencia Dev. Corp. et al.*, 406 F. 2d 251, 252 (1st Cir. 1969); *Bucy v. Nevada Constr. Co.*, 125 F. 2d 213, 217 (9th Cir. 1942); *Cook v. J.C. Penney Co., Inc.*, 558 F. Supp. 78, 79 (N.D. Iowa 1983); *Rosenburg v. GWV Travel, Inc.*, 480 F. Supp. 95, 97 (S.D.N.Y. 1979); *Yarbrough v. Blake*, 212 F. Supp. 133, 147 (W.D. Ark. 1962).

is somehow governed by the Hague Convention. Indeed, prior to SMAI's First Motion for Reconsideration, it never raised or briefed the issue of whether South Carolina's alternative method of service upon a foreign corporation (S.C. Code §15-9-245) was governed by the Hague Convention. The crux of the parties' dispute has always been whether SMC does business in the state such that **Peake** could avail himself to that **method of service as an alternative means to the Hague Convention.** Indeed, SMAI has already conceded this point by virtue of its March 14, 2019 Response: SMAI stated, "The proper means of serving SMC in this action is by complying with the requirements of the Hague Convention, **and there is no evidence that Plaintiff has attempted to serve SMC through this method**." (ECF No. 24 at 7.) In other words, SMAI's legal theory was based upon the premise that "S.C. Code §15-9-245 [is] inapplicable because SMC is not doing any business in South Carolina" and "the South Carolina Secretary of State is not authorized to accept service on behalf of SMC." (*Id*.) This theory is wholly distinct from what SMAI argues in its reconsideration motions.

SMAI's basis for reconsideration is as follows: "SMC is requesting that the Court reconsider its determination that SMC has been properly served through the Secretary of State under §15-9-245 **because this finding did not take into account whether the Hague Convention requirements apply and whether Plaintiff followed them in completing service on SMC.**" (ECF No. 62 at 3.) This argument is one that was not previously raised despite SMAI's ability to raise it before judgment. As such, it is an improper basis on which to support its First and Second Motions for Reconsideration. *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.,* 148 F. 3d at 403. Putting aside SMAI's incurable procedural issues, SMAI's argument that the Hague Convention applies to S.C. Code §15-9-245 fails as a matter of law.

C. S.C. Code §15-9-245 is Not Governed by the Hague Convention.

In its Second Motion for Reconsideration, SMAI argues that the court—in denying its First Motion for Reconsideration—committed an error of law when it "relied on the Supreme Court's opinion in *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504 (2017), [but] failed to acknowledge that Japan formally objected to Article 10(a) and to receiving service by mail on December 21, 2018." (ECF No. 64 at 1.) SMAI misconstrues this court's reference to *Water Splash* in its October Order (ECF No. 63).[10] Indeed, *Water Splash* was not even mentioned in this court's decision to grant Peake's Remand Motion nor was it the operative basis for denying SMAI's First Motion for Reconsideration. Instead, as the court outlined in the Remand Order and, again, in its Order denying SMAI's First Motion for Reconsideration, the court denied the Motion because the Hague Convention was not the sole method of service available to Peake. That is, service through S.C. Code §15-9-245 is an **alternative** method of service that is neither governed by, nor inconsistent with, the Hague Convention. (ECF No. 63.)[11]

The South Carolina Supreme Court and U.S. Supreme Court's Guidance

Article 1 of the Hague Convention defines the scope of the Convention, which is the subject of controversy in this case. It conditions: "The present Convention shall apply in all cases,

---

[10] While the court does acknowledge that Japan formally objected to service by mail on December 21, 2018—an action ending the country's nearly fifty-year precedent of accepting this method of service—that does not alter the outcome or disturb the basis of its Remand Order. This is because Japan's decision to no longer accept service by mail only affects situations "governed by the Hague Convention." *Water Splash* 137 S. Ct. at 1513.

[11] "As this court has already determined, in South Carolina, service is accomplished on a corporation by delivering suit papers to "any... agent... authorized by statute to receive service...." S.C.R.Civ.P. 4(d)(3). An unauthorized foreign corporation which is doing business in South Carolina is deemed to have designated the Secretary of State as its agent "upon whom process against it may be served.... S.C. Code Ann. §15-9-245(a) (2019). Service is effected upon such a foreign corporation by delivering suit papers to the Secretary of State. §15-9-245(a). The Secretary is directed to immediately forward a copy to the corporation by certified mail. §15-9-245(b). **Substituted service upon the Secretary is thus effected by service upon him as an agent**."

in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document *for service abroad*.'" *Id.* at 699 (emphasis added) (quoting Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 (Hague Service Convention), [1969] No. 6638). *See Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U. S. 694, 698 (1988). To that end, the Hague Convention specifies certain approved methods of service and "pre-empts inconsistent methods of service" **wherever it applies.** *Id.* at 699. SMAI would have this court accept the notion that the Hague Convention applies to every situation where judicial documents are mailed to a foreign company regardless of when service was complete and effective. However, the court is unpersuaded by this reasoning and the U.S. Supreme Court has rejected a strikingly similar argument. In *Schlunk*, the Court rejected the contention that "every case involving service on a foreign national will present an 'occasion to transmit a judicial…document for service abroad' within the meaning of [the Hague Convention]. *Id*. at 707.

The *Schlunk* Court further states that:

> The Convention does not specify the circumstances in which there is "occasion to transmit" a complaint "for service abroad." But at least the term "service of process" has a well-established technical meaning. Service of process refers to a formal delivery of documents that is legally sufficient to charge the defendant with notice of a pending action. **The legal sufficiency of a formal delivery of documents must be measured against some standard. The Convention does not prescribe a standard, so we almost necessarily must refer to the internal law of the forum state. If the internal law of the forum state defines the applicable method of serving process as requiring the transmittal of documents abroad, then the Hague Service Convention applies.**

*Schlunk*, 486 U.S. at 700 (citations omitted) (emphasis added). The Court later explains that "**where service on a domestic agent is valid and complete under both state law and the Due Process Clause**, [the] inquiry ends, and the Hague Convention has no implications". *Schlunk* 486 U.S. at 707. (Emphasis added). In other words, **in situations where service is valid and**

10

**effective under state law, the transmittal of documents abroad—while permitted to provide additional notice—is *not required to complete or effectuate service*.** In those situations, the Hague Convention does not apply. *Id.*

Admittedly, courts—even courts within this district—have been divided as to whether the Hague Convention applies to S.C. §15-9-245(a).[12] This is chiefly because the statutory language does, in fact, state:

> (a) **Service of the process is made by delivering to and leaving with the Secretary of State,** or with any person designated by him to receive such service, duplicate copies of the process, notice, or demand. **The Secretary of State immediately shall cause one of the copies to be forwarded by certified mail, addressed to the corporation either at its registered office in the jurisdiction of its incorporation, its principal place of business in the jurisdiction, or at the last address of the foreign business or nonprofit corporation known to the plaintiff, in that order.**

SMAI asks this court to place a laser focus on the second portion of the statute stating that the secretary "shall cause one of the copies to be forwarded by certified mail." By solely focusing on this portion of the statute, one could, reasonably, be led to believe that the statute mandates "transmittal of documents abroad" as a **requirement to effectuate and complete service**. By implication, this would necessitate the conclusion that the Hague Convention applies to §15-9-245 and impose additional requirements on the Secretary of State.[13] Though SMAI places great weight

---

[12] In support of its position, SMAI cites to *South Carolina v. Bulgartabac Holding Grp.*, where the court recognized that the Hague Convention applies to service upon a foreign corporation pursuant to §15-9-245 through the secretary of state. 2005 WL 8165771, at *2 (D.S.C. May 24, 2005). However, the *Bulgartabac* Court did not fully analyze the service issue because plaintiffs there did not allege that the defendant did business in the state, which is a major distinction from the instant case. Second, because *Bulgartabac* was not decided based on service issues, the language on which SMAI relies is dicta. Finally, the *Bulgartabac* case did not analyze the issue under South Carolina precedent nor did the case look to the South Carolina Supreme Court for guidance.

[13] For example, SMAI contends that the Hague Convention requires "Plaintiff…to fill out a Form USM-94 Hague Service Request, translate the operative complaint into Japanese, and serve the complaint and summons on Japan's Central Authority in Tokyo, Japan." (ECF No. 62 at 4.)

on the isolated words "shall cause copies to be forwarded by mail" in §15-9-245(a), the court "must consider all the words employed [in a statute] and must not review isolated phrases." *United States v. Ide,* 624 F. 3d 666, 668 (4th Cir. 2010). For "[s]tatutory construction is a holistic endeavor," that must "evaluate the statutory language itself, the specific context in which such statutory language is used, and the broader context of the statute as a whole." *Willenbring v. United States,* 559 F. 3d 225, 236 (4th Cir. 2009) (quoting *Koons Buick Pontiac GMC, Inc. v. Nigh,* 543 U.S. 50, 60, 125 S. Ct. 460, 160 L. Ed.2d 389 (2004)).

Employing this cardinal rule of statutory construction, the court also considers the other sections of the statute to determine whether "transmittal of documents abroad" is required to effectuate and complete service under §15-9-245. It is not. First, the plain language of the statute's initial sentence states, "service of the process is **made by delivering [the complaint and summons] to and leaving with the Secretary of State.**" Second, §15-9-245(c) states, "**If this section is complied with, the refusal to accept delivery of the certified mail …shall not affect the validity of the service**." S.C. Code Ann. §15-9-245(c) (emphasis added). When construed in full context, the statute does not "require the transmittal of documents abroad" to effectuate or complete service such that the Hague Convention applies. In the event that this is not evident by the statute alone, the court next looks beyond the statute.

South Carolina law, which is controlling here, supports this conclusion as well. Certainly, because federal jurisdiction in this matter rests in diversity, this court's role is to apply the governing state law. *See BP Prods. N. Am., Inc. v. Stanley,* 669 F. 3d 184, 188 (4th Cir. 2012). "It is axiomatic that in determining state law a federal court must look first and foremost to the law of the state's highest court, giving appropriate effect to all its implications." *Assicurazioni Generali, S.P.A. v. Neil,* 160 F. 3d 997, 1002 (4th Cir. 1998); *see also Private Mortg. Inv. Servs.,*

*Inc. v. Hotel & Club Assocs., Inc.*, 296 F. 3d 308, 312 (4th Cir. 2002) ("As a federal court sitting in diversity, we have an obligation to apply the jurisprudence of South Carolina's highest court, the South Carolina Supreme Court."). If, as here, the state's highest court has not directly addressed the specific issue, a federal court "must anticipate how [the South Carolina Supreme Court] would rule." *Liberty Univ., Inc. v. Citizens Ins. Co. of Am.,* 792 F. 3d 520, 528 (4th Cir. 2015). In other words, this court is to anticipate whether the South Carolina Supreme Court would hold that S.C. §15-9-245 **requires the transmittal of documents abroad to complete service such that the Hague Convention governs this method of service upon a foreign defendant doing business in the state**. While the South Carolina Supreme Court has not addressed this specific issue, it has definitively ruled on a substantially analogous question.

In *Holman v. Warwick Furnace Co.*, the South Carolina Supreme Court certified the following questions:

> 1. When service of process is made on a [foreign] defendant[14] pursuant to S.C. Code Ann. §15-9-245, is the date of service (a) the date on which the Summons and Complaint are received by the Secretary of State for service on the defendant or (b) the date on which the Summons and Complaint are received by the defendant from the Secretary of State?

318 S.C. 201, 204, 456 S.E. 2d 894, 895 (1995).

The *Holman* Court, held that "once a summons and complaint are delivered to the secretary of state, **service is complete**, regardless of whether the corporation actually receives notice of the suit." *Holman*, 318 S.C. at 204. Further, the court specifically held that "**service pursuant to §15-9-245 is effective upon delivery of the summons and complaint to the Secretary of State.**" *Id*. More importantly, the *Holman* Court distinguished "service by mail" upon a foreign defendant

---

[14] In *Holman*, the subject defendant was a Swiss company. Switzerland has been a member of the Hague Convention since 1988. https://www.hcch.net/en/states/hcch-members/details1/?sid=73

13

from "service upon a designated agent" on behalf of a foreign defendant. *Id*. at 205. In discussing the difference, the court stated, "service of process under [a different] longarm statute, S.C. Code Ann. §**36-2-806**(1)(c), is not complete until delivery." However, if the foreign defendant is subject to §15-9-245, the mode of service is not "by mail" but by "designated agent". The critical difference is that under the general long-arm statute §36-2-806, a plaintiff is sending judicial documents by mail directly to a foreign defendant—with no intermediate agent. However, under the statute at issue, a foreign defendant is "considered to have designated the Secretary of State as its agent upon whom process against it may be served [by virtue of doing business in the state]." S.C. Code §15-9-245(a).

Here, as the court has already determined in its Remand Order, Peake is more akin to the plaintiff in *Holman*. Precisely, Peake utilized "service upon a designated agent", not "service by mail." SMAI conflates two wholly distinct and un-conflicting "modes [or methods] of service." Peake perfected service on a statutorily designated in-state, domestic agent, without the necessity of serving the Summons and Complaint abroad under the plain language of the statute. *Holman*, 318 S.C. at 204. *See also Hammond v. Honda Motor Co., Ltd.*, 128 F.R.D. 638 (D.S.C.1989). As such, the Hague Convention does not apply. *Schlunk*, 486 U.S. at 700 ("Where service on a domestic agent is valid and complete under…state law, our inquiry ends, and the Convention has no further implications."). That the Secretary of State is then directed to "forward copies" to the "corporation either at its registered office in the jurisdiction of its incorporation, its principal place of business in the jurisdiction, or at the last address of the foreign business known to the plaintiff, in that order" is not a requirement to effectuate service, but rather to provide additional notice.

Based on the aforementioned, the court "anticipates" that the South Carolina Supreme Court would rule in lock-step with its holding in *Holman* and determine that, under §15-9-245, (1)

service is complete at the moment a plaintiff delivers the summons and complaint to the Secretary of State and (2) service does not "require the transmission of judicial documents *abroad*" to effectuate service; therefore, (3) the Hague Convention does not apply. *Liberty,* 792 F. 3d at 528 (when the precise question has not been decided by the South Carolina Supreme Court, a district court is to "anticipate how the court would rule.") Accordingly, SMAI's Second Motion for Reconsideration (ECF No. 64) is **DENIED WITH PREJUDICE.**

## IV. CONCLUSION

SMAI's Second Motion to Remand is deficient due to incurable procedural defects and fails as a matter of law. Procedurally, the Motion is unreviewable and contains new arguments that were not initially briefed. Both deficiencies are, sufficient and independent, bases for denial.

As a matter of law, the Hague Convention does not apply to S.C. Code §15-9-245. According to the U.S. Supreme Court, the Hague Convention only applies when a foreign defendant is served with process abroad as a requirement to complete service. S.C. Code Ann. §15-9-245 specifically **contemplates an alternative method of in-state service on a statutorily designated domestic agent, the Secretary of State.** By virtue of doing business in South Carolina, through its subsidiary, SMC qualifies as the very corporation for which the statute was intended. As such, Peake could avail himself of this method of service without the need for him to send judicial documents abroad. The Hague Convention explicitly states that the law of the forum state is to be assessed when determining whether process has been served domestically or abroad. Well-established South Carolina law specifies that service is **complete** when the summons and complaint are delivered to the Secretary of State under section 15-9-245. *Holman* 318 S.C. at 204. Further, courts in this district have previously found that the service of process on a domestic agent under section 15- 9-245 is outside the contemplation of the provisions of the Hague Convention.

*See Hammond*, 128 F.R.D. at 642 ("The Hammonds assert their alternative methods of serving agents of Honda R & D make unnecessary the application of the Hague Convention. The court agrees."). Accordingly, because this court determined that service was proper under §15-9-245, it did not commit an error of law in denying SMAI's First Motion for Reconsideration, or in granting Peake's Motion to Remand as the process in this case was served domestically, not abroad, and therefore does not implicate the Hague Convention. SMAI's Second Motion for Reconsideration rehashes old arguments, raises new theories that were available—yet never briefed, and is procedurally unreviewable. As such, this court hereby **DENIES** SMAI's Second Motion for Reconsideration (ECF No. 64) **WITH PREJUDICE**. The case remains **REMANDED** and this court is still divested of jurisdiction.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

November 4, 2019
Columbia, South Carolina